Argued at Pendleton May 4, modified July 14, motion for time to
file petition for rehearing denied September 6, 1927.

# WILLIAM J. DUNN *v.* JAMES HENDERSON

## ET AL.

### (258 Pac. 183.)

**Waters and Watercourses—Upper Riparian Proprietors, Preventing
Surplus Water from Flowing to Lands of Prior Appropriator
or Lower Riparian Proprietor, Violated Latter's Right.**

1. Upper riparian proprietors, impounding more water than they
used and preventing surplus from flowing to lands of another,
violated latter's right to use water for irrigation purposes, whether
he claimed as prior appropriator or lower riparian proprietor.

**Waters and Watercourses—Evidence Held to Warrant Injunction
Against Maintenance of Dams by Upper Riparian Proprietors.**

2. Evidence *held* to show wrongful damming of stream by upper
riparian proprietors, warranting injunction at suit of one claiming
either as prior appropriator or as lower riparian proprietor.

**Equity—Court of Equity, Properly Taking Jurisdiction of Suit to
Enjoin Upper Riparian Proprietors from Maintaining Dams,
Could Award Damages for Tort.**

3. Court of equity, having properly taken jurisdiction of sub-
ject matter of suit to enjoin upper riparian proprietors from main-
taining dams preventing flow of water to lower riparian lands, could
award damages for defendants' tort.

**Appeal and Error—Decree must be Reversed and Cause Remanded
to Fix Damages, in Absence of Evidence from Which Amount
can be Determined Accurately.**

4. In absence of showing of probable expense of harvesting
hay, lost because of deprivation of water for irrigation purposes
by upper riparian proprietors' obstruction of stream, or other evi-
dence from which Supreme Court can accurately determine amount
of damages to which it finds plaintiff entitled, decree must be
reversed and cause remanded to determine amount of damages and
enter decree therefor.

---

Equity, 21 C. J., p. 141, n. 57, 58.
Waters, 40 Cyc., p. 568, n. 19, p. 570, n. 34, p. 604, n. 25,
p. 722, n. 27, p. 734, n. 32, p. 738, n. 70.

From Harney: DALTON BIGGS, Judge.

---

1. See 27 Cal. Jur. 1102.
3. See 20 R. C. L. 483.

In Banc.

Modified.

For appellant there was a brief over the names of *Messrs. McCamant & Thompson* and *Mr. Charles W. Ellis,* with an oral argument by *Mr. W. Lair Thompson.*

For respondents there was an oral argument by *Mr. Will R. King.*

BURNETT, C. J.—In Harney County there is a scope of country sometimes called the Harney Basin, in which there are three lakes, Malheur Lake, Mud Lake and Harney Lake, lying in the order named approximately on a line running from the northeast to the southwest. From the northwest, heading in the Blue Mountains, flows the Silvies River into Malheur Lake. From the south, taking its rise in Steen's Mountains and flowing north, comes the Blitzen River into Malheur Lake on its southern border. The latter stream has two main channels by which its waters debouch into the lake. The waters of Malheur Lake flow in a southwesterly direction by a stream called The Narrows into Mud Lake, which latter lake covers about two square miles. Thence the water continues its course into Harney Lake which has no known outlet. The waters of the latter lake are so impregnated with alkali that they are wholly unfit for irrigation but in the other two lakes the waters are available and have been used for irrigation purposes for many years. The country adjacent to these lakes is very flat—almost level—and for several years after settlers began to occupy land there, the only mode of irriga-

tion was to depend on the natural overflow and spread of the water of the spring floods resulting from the melting snow. The irrigation was wholly natural and not artificial.

The plaintiff owns upward of 1,000 acres of land bordering on the southern and western margins of Mud Lake. The defendants own about 700 acres near the east end of Mud Lake and along the connecting stream, known as The Narrows. At a time which, as the evidence shows, was prior to any artificial use of the waters upon the land of the defendants, the plaintiff, in connection with other parties, constructed a dam across one branch of the Blitzen River and diverted the water toward the west so it entered The Narrows by a much shorter route than by passing around through Malheur Lake. Thence, from The Narrows it flowed into Mud Lake, from whence the plaintiff used it to irrigate his land adjacent to that body of water.

Declaring his title to the lands and his priority in beginning the artificial use of the water thereon, the plaintiff charges that in 1919, about the month of June, the defendant constructed a practically water-tight dam across The Narrows, whereby the stream was prevented from flowing at all into Mud Lake; that the defendants simply held the water in The Narrows and backed it up into Malheur Lake so that the plaintiff was entirely deprived of any use of the water that would have otherwise been employed in the irrigation of his lands; and that this was continued during the irrigation seasons of 1919 and 1920, with the result that he wholly lost his crops of those two years together with the pasturage that he would otherwise have enjoyed for

four hundred head of his cattle during the same period.

The prayer is for a decree enjoining the defendants from maintaining the dams, that he be declared to be entitled to the prior right to the use of the waters of said channel and Mud Lake in an amount sufficient properly to irrigate his lands, and for damages in the sum of $10,000, together with further relief.

The defendants, after averring their ownership of their lands, claimed that they were naturally irrigated from time immemorial by the waters of the lake system spreading over the ground annually as the result of the spring freshets; that the seasons of 1919 and 1920 were extremely dry and that they constructed the dam across The Narrows simply for temporary purposes to throw the water out upon their adjacent lands, and that at times when the water was plentiful, the dam served no useful purpose to the defendants, and prays for a dismissal of the suit.

The reply challenges the answer in material particulars. A decree was rendered by the Circuit Court which was unsatisfactory to the plaintiff and he appealed.

1. We think it is established by a preponderance of the evidence that the plaintiff's right to use the water in the way described is prior in time to any use to which the defendants have put the water. The plaintiff diverted the water from Blitzen River and carried it to The Narrows and thence by that natural channel into Mud Lake, from whence he used it for his irrigation purposes. This was accomplished by means of the dam across one branch of the Blitzen River and sundry other dams whereby

natural sloughs were employed for the transmission of the water. The action of the defendants was simply to back up the water and not allow it to run on down to where the plaintiff could use it by means of his prior right. In other words, the effect of the defendants' action was utterly to deprive the plaintiff of the use of the water and that too without right. Granted, as it amply appears, there was a shortage of water, yet the plaintiff, being prior in time in the application of the water, was certainly entitled to be served first and the testimony is practically uncontroverted that there was enough water stored and unused in The Narrows to have gone a long way, if not entirely, in the proper irrigation of the plaintiff's land. It is unnecessary as well as impracticable on the record before us to decide whether the plaintiff claims as an appropriator or as a lower riparian proprietor. If the former, the defendants took what did not belong to them. If the latter, they violated the plaintiff's right by impounding the water beyond what they used themselves and not allowing the surplus to flow on its way to the lower riparian lands.

It is in testimony, and undisputed, that the defendant, James Henderson, declared his purpose of obstructing the stream beforehand, avowing that it might be profitable to him even if he had to pay the plaintiff for a crop of hay. It is also in the evidence that on one occasion when the plaintiff went to inspect the dam that the defendants had constructed, the defendant, James Henderson, armed with a repeating rifle, ordered the plaintiff off the premises.

2, 3. Under the conditions disclosed by the testimony, it is clear that the defendants acted without

right and that it is a proper subject for injunction at the hands of the court. Having properly taken jurisdiction of the subject-matter, it is right for a court of equity to award damages for the tort of the defendants. We are of the opinion that the plaintiff is entitled to recover damages from the defendants but the state of the testimony is such that we cannot, with any degree of accuracy, determine the amount. For instance, there is nothing to show what would have been the probable expense of harvesting the hay in those two years, which would necessarily be deducted from the value of the finished product in the stack.

4. The decree of the Circuit Court is, therefore, reversed and the cause is remanded to the court, with directions to determine the amount of damages, taking testimony on that subject as the court may be advised, entering a decree in favor of the plaintiff and against the defendants according to this opinion and the findings on the subject of damages, together with costs and disbursements.

REVERSED AND REMANDED, WITH DIRECTIONS.

BEAN, J., concurs in the result.